UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA WISE WILLIAMS,

                         Plaintiff,                Civil Action No. 14-13944
                                              Honorable Robert H. Cleland
                                              Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE**
**COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT [12]**

Plaintiff Anita Wise Williams ("Williams") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed a motion for summary judgment [12] which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Williams is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [12] be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

II.     REPORT

A.      Litigation History

When Williams commenced this action, she was represented by attorney Richard Doud of the firm Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm"). Doud filed a motion for summary judgment on Williams's behalf on February 6, 2015. [9]. On April 18, 2015, attorney James Smith ("Smith") of the Firm moved to substitute into the action for attorney Doud on behalf of Williams. [13].

On May 20, 2015, this action was transferred to a three-judge panel (the "Panel") to address the Firm's representation of Social Security claimants in the Eastern District of Michigan. [5/20/15 docket entry]. Pursuant to 15-AO-033, the Panel administratively stayed this action. On October 19, 2015, pursuant to 15-AO-045, the Panel determined that affected cases (including this one) would be transferred back to the originally assigned judge, and that it would be each such judge's responsibility to determine when to lift the stay. [10/19/15 docket entry].

The Court was later advised that the Firm had notified Williams that she would have until December 30, 2015, to retain a new attorney and have that attorney file an appearance in this action. [16]. Williams was also notified that if no such appearance was filed by December 30, 2015, the Court would consider Williams to be continuing her appeal without legal representation, *i.e.*, that she would be representing herself in this action *pro se*. [*Id.*]. On March 3, 2016, because no new attorney appeared on Williams's behalf, the Court entered an Order deeming her to be representing herself *pro se*, striking her prior summary judgment motion from the docket, and amending the scheduling order to give Williams until April 4, 2016, to file a summary judgment motion.[1] [18]. To date, Williams has not filed a new motion for summary

---

[1] In light of the fact that Williams was proceeding *pro se*, the Court noted that, "her filing need not be in the form of a formal legal brief – rather, Williams may simply advise the Court in

judgment,[2] and the Commissioner has informed the Court that she will rely on her original brief. [19].

### B.      Procedural History

On July 11, 2012, Williams filed an application for DIB, alleging a disability onset date of December 30, 2007. (Tr. 56, 62, 113-14).  This application was initially denied on August 30, 2012. (Tr. 61-62).  Williams filed a timely request for an administrative hearing, which was held on June 7, 2013, before ALJ Andrew Sloss. (Tr. 31-55).  Williams, who was represented by attorney Andrew Ferguson, testified at the hearing, as did vocational expert Melody L. Henry. (*Id.*).  On June 17, 2013, the ALJ issued a written decision finding that Williams is not disabled. (Tr. 19-27).  On March 18, 2014, the Appeals Council denied review. (Tr. 1-5).  Williams timely filed for judicial review of the final decision on October 13, 2014. (Doc. # 1).

### C.      Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

writing as to why he believes the Commissioner's decision is in error."  [*Id.*].

[2] On May 5, 2016, the Order which was sent to Williams was returned as undeliverable.  [20]. Realizing that the address on the Court's docket was slightly different than the one in the record, the Court re-sent its Order to Williams at the correct address on May 10, 2016, and gave her until May 25, 2016, to file a new summary judgment motion.  (Doc. #21).  That deadline has passed, and Williams has not filed anything further in this action.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.    Background

#### 1.    *Plaintiff's Reports and Testimony*

In an undated disability report, Williams indicated that she suffers from high blood pressure, fibromyalgia, diabetes, immune deficiency, bilateral carpal tunnel syndrome, and sleep apnea. (Tr. 130).  Williams reported that she stopped working on December 30, 2007, as a result of these conditions. (*Id.*).  With respect to her education level, Williams completed the twelfth grade but did not pursue any further studies. (Tr. 131).  Prior to stopping work, Williams was employed as an assembly worker at an automotive parts company. (*Id.*).  Williams stated that

4

Nasir Ahmad, M.D., was her primary care doctor and that Smita Bijlani, M.D., was her endocrinologist. (Tr. 133-34). At the time of the report, Williams was taking amlodipine (for diabetes), glipizide (for diabetes), insulin (for diabetes), losartan (for blood pressure), sertraline (for diabetes), and simvastin (for cholesterol). (Tr. 132).

In a function report dated July 24, 2012, Williams stated that she lives in an apartment with her family. (Tr. 156). She indicated that on "some days I'm not able to do anything – can't use my hands some days – diabetes not controlled and BP [blood pressure] uncontrolled." (Tr. 157). Williams reported that she can no longer do anything and that she cannot sleep due to sleep apnea. (*Id.*). She needs assistance with personal care and attending to basic hygiene because of "difficulty holdings things [and] dropping them." (Tr. 157). She prepares "quick and easy meals" on a daily basis. (Tr. 158). She can perform some household chores although she generally cannot use her hands. (*Id.*). Williams is able to drive by herself and ride in a car. (Tr. 159). She goes grocery shopping with her husband once or twice a month. (*Id.*). Williams is capable of paying bills, counting change, and handling a checking and savings account. (*Id.*). She has no hobbies, but she attends religious services on a regular basis. (Tr. 160). Williams occasionally visits with acquaintances and noted that she does not have any problems getting along with family, friends, or neighbors. (Tr. 161).

When asked to identify functions impacted by her condition, Williams checked lifting, squatting, bending, reaching, completing tasks, and using her hands. (*Id.*). Williams indicated that she can follow both written and spoken instructions. (*Id.*). She also stated that she gets along with authority figures; handles stress; and changes in routine. (Tr. 162). Williams reported that her medications cause drowsiness. (Tr. 163).

At the time of the June 7, 2013 hearing before the ALJ, Williams stated that she had a

5

twelfth-grade education and that she received a certificate in medical billing. (Tr. 34). Although she is able to operate a car, Williams testified that she needs help getting home when her hands and arms become tired. (Tr. 34-35). Williams indicated that she worked in production for a small automotive parts manufacturer where she assembled parts (weighing less than 20 pounds) and then taped, packed, and labeled boxes for shipment. (Tr. 35-36). She described the work as "repetitive." (*Id.*). Williams reported that she suffers from diabetes, which causes her to make frequent trips to the bathroom, and results in swelling and pain throughout her body. (Tr. 37). She stated that she has trouble performing repetitive work such as typing and that her diabetes is treated with insulin. (*Id.*).

Williams also testified that she suffers from fibromyalgia and that she takes Vicodin to treat her muscle pain. (*Id.*). She also suffers from bouts of depression. (Tr. 38). Williams related that she has intermittent difficulty cooking her own meals and significant difficulty vacuuming, sweeping, and exiting the bathtub. (*Id.*). She stated that she does not feel like going outside and that she spends most of her days "popping pills and sleeping." (*Id.*).

On direct examination from her attorney, Williams recalled that at her past employment she used to lift boxes with three other colleagues. (Tr. 39-40). On account of diabetes, Williams stated that she has to use the bathroom at least three times per hour. (Tr. 40). Since June 2012, Williams reported that she suffers from constant pain that radiates from her back down through her legs and feet. (Tr. 41, 43). On a scale from one through ten, Williams rated her pain at nine and a half. (*Id.*). She acknowledged that the pain diminishes with medication, but that it makes her drowsy. (*Id.*). Williams also indicated that she suffers from pain in her shoulders and hands, coupled with numbness and tingling in her fingers. (Tr. 43). On a scale from one through ten, Williams rated this pain at a ten. (Tr. 44). She testified that her pain hinders her ability to

perform household chores, grasp objects, utilize zippers and buttons, and dress herself. (Tr. 45-46).

As for social activities, besides regularly attending religious services, Williams related that she mostly stays home and visits people once a month. (Tr. 47). She takes two naps a day, each one lasting approximately an hour and 15 minutes. (Tr. 48). Williams uses a heated recliner at various times throughout the day to elevate her feet above waist-level. (Tr. 48-49). She reported that she cannot lift a full container of milk; she has trouble turning door knobs; she suffers from daily fatigue; she is able to walk one city block before she needs to rest; and she must alternate between standing, sitting, and reclining every 10-15 minutes. (Tr. 49-51).

2.   *Medical Evidence*

The Court has thoroughly reviewed Williams's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3.   *Vocational Expert's Testimony*

Melody L. Henry testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 53-55). She testified that Williams's past relevant work as an assembler should be classified as light and unskilled. (Tr. 53). The ALJ inquired whether Williams would be able to perform her past relevant work if she were limited to a full range of light work. (*Id.*). The VE responded that Williams could perform her past relevant work at the light work level even in view of her psychological limitations. (Tr. 54). The ALJ then asked the VE whether there are any jobs in the national economy that Williams could perform that would otherwise allow her to be absent from work more than twice a month on a regular basis. (*Id.*). The VE testified that there were no such jobs in the national economy and she confirmed that her

7

testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.*).

On cross-examination, Williams's attorney asked the VE whether the following limitations would be work preclusive: (1) three bathroom breaks per hour; (2) an hour to an hour and 15 minute nap two times a day; and (3) elevation of the feet above waist-level numerous times a day. (Tr. 54-55).   The VE responded that the proposed limitations would be work preclusive if they "couldn't be accommodated during the breaks, and lunch hour, and needed to be done at unscheduled times." (Tr. 55).

### E.      The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Williams is not disabled under the Act.   At Step One, the ALJ found that Williams has not engaged in substantial gainful activity since her alleged onset date of December 30, 2007 through June 30, 2012, her last date insured. (Tr. 21).   At Step Two, the ALJ found that Williams has the severe impairments of diabetes and obesity. (Tr. 21-24).   At Step Three, the ALJ found that Williams's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 24-25).

The ALJ then assessed Williams's residual functional capacity ("RFC"), concluding that she is capable of performing a full range of light work. (Tr. 25-26).   At Step Four, the ALJ determined that Williams is capable of performing her past relevant work as an assembly worker (unskilled, light work). (Tr. 26).   As a result, the ALJ never reached Step Five and concluded that Williams is not disabled under the Act. (*Id.*).

### F.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).   Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all evidence

without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**G.     Analysis**

In the interest of ensuring that Williams's claim for benefits is fairly considered, even in the absence of a supporting brief, the Court has independently examined the record, and evaluated the merits of the Commissioner's arguments (which were responsive to Williams's initial arguments) to determine whether the ALJ's decision is supported by substantial evidence.

2.     *Substantial Evidence Supports the*
*ALJ's Finding that Williams Is Not Disabled*

As set forth above, the ALJ found that Williams has the RFC to perform a full range of light work. (Tr. 25-26).  Based in part on the VE's testimony, the ALJ concluded that Williams is not disabled under the Act because she is capable of performing her past relevant work as an assembly worker.  (Tr. 26).

A.     *Credibility*

The Court finds that the ALJ reasonably discounted Williams's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 25-26).  As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain, or other symptoms, rest with the ALJ because "the ALJ's

10

opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain, or other symptoms, is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ adequately discussed the objective medical evidence regarding Williams's physical and mental impairments and reasonably explained why such evidence compelled a finding that her allegations of disability were not fully credible. (Tr. 24-26).

As for Williams's physical impairments, the ALJ noted that while "the claimant has some objective signs and findings in the record . . . the medical evidence of record indicates mild physical . . . symptoms." (Tr. 25). This finding is supported by substantial evidence. The ALJ specifically found "no evidence of severe symptomology," with respect to Williams's diabetic condition. (*Id.*). In this regard, although Dr. Bijlani's July 15, 2008 treatment notes indicate that Williams's blood glucose levels were unsatisfactory, Williams reported that she had not followed

any specific dietary or exercise regime to bring her diabetes under control. (Tr. 230, 232).  Even so, the doctor determined that Williams had experienced no hypoglycemic episodes and that she had no known history of diabetic retinopathy, glaucoma, cataracts, diabetic nephropathy, peripheral vascular disease, cerebrovascular disease, or hyperlipidemia. (*Id.*).    Williams exhibited normal sensation to touch bilaterally and normal sensation to vibration bilaterally in her feet. (Tr. 231).  She also demonstrated no difficulties in motor strength, gait, or sensation. (Tr. 230).  These findings remained intact over the course of the next several months. (Tr. 187-88, 213-16, 227-28).   While Dr. Bijlani indicated that Williams did not always take her medications on time (Tr. 195), the doctor's March 8, 2010 treatment notes show that Williams's "diabetes control ha[d] improved." (Tr. 194).   By February 14, 2011, the doctor wrote that Williams's diabetes condition was "much improved" and that her weight was "improving." (Tr. 186).

The ALJ also correctly observed that Williams "has continued to experience fluctuations in blood sugar levels, primarily due to [her] noncompliance with regard to medication, diet, and exercise." (Tr. 21).  This is confirmed by Dr. Bijlani's November 2, 2012 treatment note stating that "[t]he patient has had hypoglycemic episodes . . . has not been compliant with meds." (Tr. 301; *see* 322, 327).  Even still, the medical record does not contain any complaints of swelling of the hands and feet and Dr. Bijlani did not observe any weakness in Williams's extremities. (Tr. 291, 295, 302, 322, 327, 332).   Treatment records from Williams's foot specialist, Jeffrey C. Noroyan, D.P.M., further demonstrate that her "[p]edal pulses are palpable with no vascular disorder noted" and that she "does not have any advanced diabetic neuropathy." (Tr. 339).

Similarly, medical records from Williams's appointments with Syed Sattar, M.D. are consistent with the ALJ's credibility findings.  On April 1, 2011, Williams saw Dr. Sattar after

she presented with severe lower back pain that radiated down her legs. (Tr. 260).  She did not report any tingling or numbness. (*Id.*).  Dr. Sattar noted severe spasms of the back muscles and tenderness at the lower back. (*Id.*).   Straight leg raises were positive at 60 degrees. (*Id.*).  However, a neurological evaluation revealed no deficits and an intramuscular injection of Toradol relieved Williams's back pain. (*Id.*).  More importantly, by April 4, 2011, Williams's back pain was "70% to 80% improved" (Tr. 259), and a follow-up X-ray of Williams's lumbar spine indicated only mild degenerative disc disease at L4-L5 and L5-S1 with mild degenerative changes throughout the lumbar spine. (Tr. 277).  Williams then visited Dr. Sattar on September 8, 2011, complaining of fatigue and achiness. (Tr. 250).  Although the doctor's notes from later that month indicate a diagnosis of fibromyalgia and arthralgias, Williams's fatigue and achiness improved, and blood tests conducted at that time were normal. (*Id.*).  And, a week later, on September 16, 2011, Dr. Sattar's notes indicate that Williams was "feeling better," and tolerating her new medication.  (Tr. 249).

The ALJ also appropriately noted that, while "one of [Williams's] main complaints was frequent urination due to diabetes…[and that] she required a break of up to three times an hour," those assertions were "not consistent with any of the medical evidence of record."  (Tr. 25).  Indeed, the record supports the ALJ's finding, as doctors repeatedly noted that Williams did not have excessive urination problems.  (Tr. 178, 181, 184, 294).

With respect to her mental impairments, the ALJ reviewed Williams's psychological treatment records with an outpatient counseling facility that began in September 2012. (Tr. 422-436).  While she received an initial diagnosis of major depressive disorder, the ALJ appropriately concluded that Williams's mental condition "remained stable, with no essential change noted in terms of the claimant's functioning." (Tr. 24).  Williams's therapy progress notes do not reveal

13

any signs of disruption of thought, manic behaviors, or lack of cooperativeness and attentiveness. (Tr. 422-30).

Moreover, the mere fact that certain aspects of the record may be consistent with Williams's alleged impairments did not necessitate a finding that she was fully credible regarding *the extent* to which her symptoms can be attributed to those impairments.  This is precisely why the ALJ must consider and weigh "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physician . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible.  *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.  In this case, the ALJ appropriately determined, based upon a review of *all* of the medical evidence, as well as Williams's testimony, that she was partly credible to the extent her claimed level of physical and mental impairments did not exceed the RFC assessment. (Tr. 25-26).  For the reasons stated above, Williams has not shown that the ALJ's overall evaluation of the evidence was in any way erroneous.

In view of the foregoing, the Court concludes that Williams has not shown a "compelling reason" to disturb the ALJ's credibility determination, *Smith*, 307 F.3d at 379, particularly where the ALJ provided a reasonable explanation for discounting Williams's credibility, and that explanation is supported by substantial evidence.

### B.   VE Hypothetical

The Court also finds that the ALJ's hypothetical to the VE appropriately accounted for Williams's physical and mental limitations.  There is no evidence in the record that would support imposing more restrictive limitations than those already specified in the ALJ's

hypotheticals.  Indeed, as noted above, the ALJ correctly found that Williams's main contention that "she required a break of up to three times an hour" due to excessive urination was belied by the medical record.  *Supra* at 13.  Accordingly, the ALJ was not required to include such limitations in his hypothetical question to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, No. 13-10687, 2013 U.S. Dist. LEXIS 176870, at \*24-25 (E.D. Mich. Dec. 17, 2013) (same).  As such, any argument that the ALJ formed an inaccurate hypothetical lacks merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [12] be GRANTED and the Commissioner's decision be AFFIRMED.

Dated: May 31, 2016                             s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 31, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager